FILED
U.S. District Court
District of Kansas

OCT 18 2021

Clerk, U.S. District Court
By [signature] Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**SHAUNA MCROBERTS,**
7814 Robinson Street
Overland Park, Kansas 66204

**Plaintiff,**

**v.**

**THE CITY OF OVERLAND PARK, KANSAS**
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**FRANK DONCHEZ,** Chief of Police, Overland Park Police Department, in his official and individual capacities,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**KENDRICK ROSAS**, Officer, Overland Park Police Department, in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**D. HAWKINS**, Officer, Overland Park Police Department, in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**K. DICKENSTEIN**, Officer, Overland Park Police Department, in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**Civil Action No.** 2:21-CV-02470-DDC-TJJ

**JURY TRIAL DEMANDED**

**JOHN DOE 1**, Officer,
Overland Park Police Department,
in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**JOHN DOE 2**, Officer,
Overland Park Police Department,
in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**JOHN DOE 3**, Officer,
Overland Park Police Department,
in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**JOHN DOE 4**, Officer,
Overland Park Police Department,
in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**JOHN DOE 5**, Officer,
Overland Park Police Department,
in his individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, Kansas 66212

**JANE DOE 1**, Officer,
Overland Park Police Department,
in her individual capacity,
c/o Elizabeth Kelley, Clerk,
Overland Park Police Department
8500 Santa Fe Drive
Overland Park, KS 66212

**STEPHEN M. HOWE,** District Attorney, Office of the District Attorney, 10th Judicial District, in his official and individual capacities,
c/o Johnson County District Attorney
100 North Kansas Avenue
Olathe, Kansas 66061

**PETE GLASSER,** Assistant District Attorney, Office of the District Attorney, 10th Judicial District, in his official and individual capacities,
c/o Johnson County District Attorney
100 North Kansas Avenue
Olathe, Kansas 66061

**THE BOARD OF COMMISSIONERS OF THE COUNTY OF JOHNSON, KANSAS**
c/o Clerk, Johnson County Board of County Commissioners
111 South Cherry Street
Suit 3300
Olathe, Kansas 66061

**CALVIN HAYDEN,** Sheriff, Johnson County, in his official and individual capacities,
c/o Clerk, Johnson County Board of County Commissioners
111 South Cherry Street
Suit 3300
Olathe, Kansas 66061

**JERRY DOE 1-10,** Officer, Johnson County Detention Center, in his individual capacity,
c/o Clerk, Johnson County Board of County Commissioners
111 South Cherry Street
Suit 3300
Olathe, Kansas 66061

**JOHN REYNOLDS,** MED-ACT EMT-Paramedic, Johnson County, in his individual capacity,
c/o Clerk, Johnson County Board of County Commissioners
111 South Cherry Street
Suit 3300
Olathe, Kansas 66061

**Defendants.**

## COMPLAINT

COMES NOW Plaintiff Shauna McRoberts and for her causes of action against Defendants, states and alleges as follows:

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues raised herein.

### DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial.

### PARTIES

1. Plaintiff Shauna McRoberts, at all times relevant hereto, was a resident of Overland Park, Johnson County, Kansas and a citizen of the United States.

2. Defendant City of Overland Park, Kansas is a municipality acting through its constituent, the Overland Park, Kansas Police Department (hereinafter "OPPD"). The Defendant City of Overland Park was, at all times relevant hereto, a municipality created by the law of the state of Kansas, acting under authority conveyed under state law. It is an entity subject to suit under state and federal laws.

3. Defendant Frank Donchez, at all times relevant hereto, was the Chief of Police for OPPD. Defendant Donchez has final policymaking authority regarding OPPD, primary responsibility for the adminstration of activities and services of OPPD, and implements the policies, procedures, rules, regulations, and guidelines of OPPD.

4. Defendant Kendrick Rosas, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 1 is sued in his individual capacity.

5. Defendant D. Hawkins, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. D. Hawkins is sued in his individual capacity.

6. Defendant K. Dickenstein, on information and belief, at all times relevant

hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. K. Dickenstein is sued in his individual capacity.

7. Defendant John Doe 1, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 1 is sued in his individual capacity.

8. Defendant John Doe 2, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 2 is sued in his individual capacity.

9. Defendant John Doe 3, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 3 is sued in his individual capacity.

10. Defendant John Doe 4, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 4 is sued in his individual capacity.

11. Defendant John Doe 5, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. John Doe 5 is sued in his individual capacity.

12. Defendant Jane Doe 1, on information and belief, at all times relevant hereto, was an OPPD police officer who was a participant in the acts and omissions giving rise to this Complaint. Jane Doe 1 is sued in her individual capacity.

13. Defendant Stephen M. Howe, at all times relevant hereto, was the elected District Attorney, and executive officer, for the 10th Judicial District. The Office of the District Attorney (hereinafter "Office of the DA) is a separate entity within the 10th Judicial District. Defendant Howe has final policymaking authority regarding the Office of the DA, primary responsibility for the adminstration of activities and services of the Office of the DA, and implements the policies, procedures, rules, regulations, and guidelines of the Office of the DA.

14. Defendant Pete Glasser, at all times relevant hereto, was an Assistant District Attorney in the Office of the DA.

15. Defendant Board of Commissioners of the County of Johnson, Kansas (hereinafter "Johnson County") was created by, and established under, the laws of the State of Kansas. It is an entity subject to suit under state and federal laws. The Sheriff's Department is a department within the County of Johnson. MED-ACT is a department within the County of Johnson.

16. Defendant Calvin Hayden, at all times relevant hereto, was the Sheriff of Johnson County, Kansas. Defendant Hayden has final policymaking authority regarding the Johnson County, Kansas Adult Detention Center (hereinafter "the Detention Center"), primary responsibility for the administration of activities and services of the Detention Center, and implements the policies, procedures, rules, regulations, and guidelines of the Detention Center.

17. Defendant John Reynolds, on information and belief, at all times relevant, was a Johnson County, Kansas MED-ACT EMT-Paramedic who was a participant in the acts and omissions giving rise to this Complaint. John Reynolds is sued in his individual capacity.

18. Defendants Jerry Doe 1-10, on information and belief, at all times relevant hereto, were officers at the Detention Center who were participants in the acts and omissions giving rise to this Complaint. Jerry Doe 1-10 is sued in his individual capacity.

## JURISDICTION AND VENUE

19. Jurisdiction over this action is conferred by 28 U.S.C. § 1331, which provides original jurisdiction over all civil actions arising under the Constitution, law or treaties of the United States. Jurisdiction is further conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court in suits authorized by 42 U.S.C. § 1983.

20. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide her related claims arising under under state law, which are so related to each

other and to the federal claims herein pleaded that they form part of the same case or controversy, as provided in 28 U.S.C. § 1367.

21. Plaintiff's actions for damages are authorized by:

a. 42 U.S.C. § 1983, which provides for redress for the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges or immunitites secured to all citizens or persons within the jurisdiction of the United States;

b. the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States;

c. the Kansas Tort Claims Act, K.S.A. 75-6101, *et seq*.

d. The common law of the State of Kansas; and

e. 42 U.S.C. § 1988, which authorizes Plaintiff's application for attorneys' fees and provides that a court may award a reasonable attorneys' fee as part of costs in any action or proceeding to enforce a provision of 42 U.S.C. § or 42 U.S.C. § 1983.

22. This Court has jurisdiction over all Defendants because the unlawful acts alleged in this Complaint were committed in Overland Park, Johnson County, Kansas, which lies within the District of Kansas.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events, acts, or omissions giving rise to Plaintiff's claims occurred in Overland Park, Johnson County, Kansas, which lies within the District of Kansas.

**Conditions Precedent**

24. On June 15, 2021, Plaintiff's written Notice of Claim was filed with Elizabeth Kelley, Clerk for Defendant OPPD, pursuant to K.S.A. 12-105b(d). The claim is deemed denied because more than 120 days has passed following the filing of the claim and the Defendant OPPD has not approved the claim. On June 16, 2021, Plaintiff's Notice of Claim was filed with the Clerk of the Johnson County. The claim is deemed

denied because more than 120 days has passed following the filing of the claim and the Defendant Johnson County has not approved the claim.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS

25. Plaintiff is a longtime Overland Park, Kansas resident, U.S. Army combat veteran, and licensed attorney in the state of Missouri, in good standing.

26. On September 16, 2018, Plaintiff was arrested without probable cause for misdemeanor domestic assault (first offense) by four OPPD officers, aiding and abetting each other, transported to the Johnson County Detention Center, and detained overnight.

27. On September 17, 2018, after more than 22 hours, a Detention Center officer suddenly released Plaintiff, without explanation, having never seen a magistrate, and given no opportunity to defend herself or be heard. Upon information and belief, Johnson County Assistant District Attorney Pete Glasser was responsible for Plaintiff's sudden release.

28. Since Plaintiff's release until the date of this Complaint, despite repeated attempts, Plaintiff has been unable to obtain any information or documentation, to include a police report, about her wrongful arrest and detention, from either OPPD or the Office of the District Attorney. The only option she was given, by the Office of the District Attorney, was to apply to have the arrest expunged at the cost of over $200.00. For months, she was even unaware of whether or not she had been <u>charged</u> with a crime.

29. Still, a record of Plaintiff's arrest and detention remains publicly available on the Johnson County's Sheriff's website, and has been publicly available since Plaintiff was wrongfully arrested on September 16, 2018. A basic background search, using any of the software widely available to consumers and employers, among others, reveals records, and details, of the misdemeanor arrest and detention.

30. In the late evening of September 15, 2018, Plaintiff had been at her parents' home in Overland Park, her former residence, preparing to leave Kansas City

with a friend when she suddenly encountered Kathleen McRoberts (hereinafter "Kathleen"), her older sister from whom she was estranged.

31. At the time, Kathleen was out on bond and had a no-contact order with Plaintiff, because of two pending felony identity theft cases in Johnson County; Plaintiff was the listed victim. Kathleen was also approximately four months pregnant.

32. Kathleen had a long history of using Plaintiff's identity – including name, Social Security Number, and other identifying information. Previous traffic and criminal cases in Overland Park and Johnson County where Kathleen was the defendant and used or attempted to use Plaintiff's identity include:

a. Overland Park Municipal Court Case Number CR-2013-0417658[1]

b. Overland Park Municipal Court Case Number CR-2015-0475208[2]

c. Johnson County District Court Case Number 17CR02696[3]

d. Johnson County District Court Case Number 18CR01144[4]

e. Johnson County District Court Case Number 18CR01146[5]

33. Assistant District Attorney Pete Glasser (hereinafter "ADA Glasser") prosecuted each of the felony identity theft cases against Kathleen in Johnson County; each time Plaintiff was named by the Office of the District Attorney as her sister's victim. The three cases all stemmed from incidents in 2017; however, ADA Glasser waited until the near-conclusion of 17CR02696, when a plea agreement had been reached and only sentencing remained, to charge 18CR01144 and 18CR01146. Both cases, now charged as Kathleen's third and fourth felony identity theft charge, stemmed from traffic stops in Shawnee, Kansas, one more than a year old.

34. Thus, over the course of 2018, Plaintiff had a number of personal contacts with ADA Glasser, including a face-to-face to meeting, at his invitation, in his office, on

[1] On information and belief, this case originated over the failure to stop at a stop sign.
[2] On information and belief, this case originated over a traffic stop for speeding.
[3] On information and belief, this case originated over a 911 call because of accusation of battery.
[4] On information and belief, this case originated over a traffic stop for driving on a suspended license.
[5] On information and belief, this case originated over a traffic stop for driving on a suspended license.

or about February 21, 2018. Other contacts include a 20-minute phone call on June 13, 2018, and a 31-minute phone call on August 28, 2018. Plaintiff was under the impression ADA Glasser reached out solely because of her status as a victim, and uniquely appreciated the uncomfortable and unfortunate family dynamic.

35. On the night of September 15, 2018, Plaintiff and Kathleen had exchanged a few words on the street outside their parents' home and then, suddenly and without warning, Kathleen pinned Plaintiff inside the driver's side car door, floored the accelerator, and dragged Plaintiff down the pavement. At the bottom of the street, which intersects with 78th Street, Kathleen let the driver's side door fly open, releasing the Plaintiff, who pitched forward, skinning her head on the concrete.

36. Shoeless, bleeding, completely shaken from the sudden and unprompted vicious assault at the hands of her sister, and in agonizing pain, Plaintiff ran screaming back to her parents' house. After seeing her condition, Plaintiff's step-father dialed 911.

37. Upon information and belief, OPPD dispatched Officer Kendrick Rosas and Officer John Doe 4, and an ambulance to the residence. Plaintiff related the events of exactly what had occurred to Defendants Rosas and John Doe 4 at the scene.

38. After giving her statement, Plaintiff was loaded into a waiting ambulance by Johnson County MED-ACT EMT-Paramedic John Reynolds. EMT-Paramedic Reynolds was demeaning and callous; he told Plaintiff her "story" was hard to believe, as she was strapped to a stretcher in an ambulance, covered in bleeding wounds.

39. Some time later, at the hospital Emergency Room, upon information and belief, Officer Rosas arrived to further investigate the incident. From an ER bed, Plaintiff repeated the sequence of events to Defendant exactly as they happened, again.

40. Officer Rosas did not ask follow-up questions, nor raise any questions or doubts to the veracity of Plaintiff's accounting of the incident. At no time did he ask a single question or make any reference whatsover to injuries to Kathleen, or any allegation of a crime against Platintiff.

41. Upon information and belief, Defendants Rosas and John Doe 4 collected no physical evidence.

42. At the hospital Plaintiff was treated by medical personnel for road rash; Plaintiff had abrasions on her scalp, right shoulder, right elbow, right thigh, left thumb, and left great toe. Here, Plaintiff learned that Kathleen had been arrested, after the incident, for felony domestic assault.

43. Around 2:30am on September 16, 2018, Plaintiff was released from the hospital. Upon information and belief, around 4:00am on September 16, 2018, Officer Rosas called Plaintiff's friend's cell phone three or four times to inquire about "scratches" on Kathleen, and asked to speak with Plaintiff further. Because of the late hour, Plaintiff declined, and told Officer Rosas she would call the police station in the morning.

44. At 6am, upon information and belief, Plaintiff spoke with Officer Rosas, who asked her to come to the police station at 8500 Santa Fe Drive sometime that day to sign a Notice to Appear, which is required in Johnson County of all domestic crime victims.

45. Plaintiff arrived at the police station sometime around mid-morning to meet Officer Rosas. She sat outside on public benches, with many other individuals who were also waiting, until Officer Hawkins and John Doe 5 walked outside. Upon information and belief, neither Officer Hawkins nor John Doe 5 had been present at the scene the previous night, or had done any individual investigation into the previous night's incident.

46. Outside, in view of many people, Officer Hawkins and John Doe 5, told Plaintiff two crimes had been committed the previous night: felony domestic assault against Plaintiff by Kathleen, and misdemeanor domestic assault against Kathleen by Plaintiff. They then asked Plaintiff to stand, took her purse from her, and handcuffed her hands behind her back.

47. John Doe 5, who Plaintiff had never seen before, looked pleased during the arrest, smiling broadly.

48. The horrific personal events of September 15-17, 2018, did not occur in a vacuum. Despite having no contact with police of a criminal nature in 17 years (since 2001, the year Plaintiff graduated high school), during the course of June, July, August, and September 2018, the police had been contacted close to a dozen times in regards to Plaintiff.

49. The OPPD officers Plaintiff suddenly frequently encountered during that time were abusive, demeaning, and cruel. They were not well-trained, showed no care or concern, and appeared to act with unchecked authority. Often, officers acted with a clear personal animus or bias and/or committed blatant violations of Plaintiff's right to privacy.

50. On July 20, 2018, when John Doe I responded to Plaintiff's residence to check on Plaintiff's welfare, he was demeaning, cruel, and seemed to blame Plaintiff for the 911 call, made unbeknowst to the Plaintiff. Plaintiff recognized John Doe 1 from an unrelated previous encounter in February 2017, and, upon information and belief, he also recognized her.

51. On August 21, 2018, Officer Hawkins responded to the scene where Plaintiff was the victim of a domestic assault. He was cruel, apathetic to Plaintiff's needs or concerns, and openly complained about the citizens of Overland Park, and its number of 911 calls. Officer Hawkins groused that at least the poorer residents of north Overland Park (where Plaintiff lived) were "better" than the more affluent residents in south Overland Park.

52. On August 22, 2018, when called to Plaintiff's current residence, Officer K. Dickenstein, John Doe 2, and John Doe 3 were abusive, cruel, and demeaning. Officer Dickenstein openly ridiculed Plaintiff, commented that she did not have "squatter's rights" at her parents' home and ordered her to leave, without allowing her to dress in

proper clothing or grab any of her possessions other than her purse. Officer Dickenstein was particularly verbally abusive, in comparison to his colleagues.

53. On August 26, 2018, while Plaintiff was staying at a local hotel, Jane Doe 1 suddenly arrived at her hotel room door and asked to speak with her. Plaintiff learned that an estranged friend, whom she had not spoken to or been contacted by for several months, had called 911 and falsely reported that she was concerned about Plaintiff's well-being. Defendant Jane Doe 1, upon information and belief, did no investigation before "pinging" Plaintiff's phone and interrupting her seclusion and solitiude by knocking on her hotel room door. Jane Doe 1 did not even bother to inquire whether the reporting party had attempted to contact Plaintiff herself before calling 911.

54. The horrific sequence of events, at the hands of state actors, culiminated in Plaintiff's wrongful arrest on September 16, 2018, when absolutely zero facts existed in which a reasonable officer could conclude she had or was committing a criminal offense.

55. There was no probable cause to arrest Plaintiff on September 16, 2018. There was not a single fact or piece of evidence, despite an overall wealth of information available to aid an objectively reasonable officer's probable cause determination, that Plaintiff had or was committing a crime.

56. No objectively reasonable officer or officers could have believed there were sufficient facts to justify Plaintiff's arrest.

57. Plaintiff had been asked to come to the police station by Officer Rosas under the guise of signing a Notice to Appear, and then was suddenly arrested by Officer Hawkins and John Doe 5 in a public waiting area, filled with people.

58. When Plaintiff was arrested, she was covered in open wounds and road rash gashes along the right side of her body. These recent and significant open wounds required prescription medication and wound dressing care at exact and specific intervals, as set forth in hospital discharge orders.

59. Plaintiff was also in an extreme amount of emotional and physical pain when she arrived at the police station. This is a fact Officer Rosas, Officer Hawkins, John Doe 4, and John Doe 5 were aware of and collectively took advantage of, aiding and abetting each other, with extreme malice.

60. As a result of the actions, omissions, conduct, and behavior of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5, Plaintiff was handcuffed, formally and falsely arrested, and transported to the Detention Center, when there was no probable cause present and no reasonable officer could believe that Plaintiff had or was committing a crime.

61. Defendant Hawkins alone transported Plaintiff to the Detention Center in his police car. Handcuffed in the backseat, Plaintiff frantically asked Officer Hawkins, "what is happening? What did I do?" Officer Hawkins said clearly that he did not like Plaintiff's voice or questions, and called them annoying "just like last time." It was clear Officer Hawkins was retaliating against Plaintiff for merely exercising her right to free speech by speaking with him when he'd previously responded to a call where she'd been victimized.

62. As with OPPD officers, the manner in which Plaintiff was treated at the Detention Center, where she was detained despite the fact there was no probable cause to arrest her, by Jerry Doe 1-10 was also extraordinary in that it was unsually harmful to her privacy and physical interests. Jerry Doe 1-10 was clearly poorly trained and did not care whatsoever about the individuals in their care.

63. At the Detention Center, Plaintiff was processed like a jail inmate by Jerry Doe 1-10. She was issued jail garb and shoes to wear, and her clothing and personal items were taken. During this process, Plaintiff experienced taunting and bullying, as well as unnecessary and grossly inappropriate remarks and questions. Jerry Doe 1-10 was abusive, demeaning, and cruel.

64. Plaintiff was detained in a jail cell overnight. Despite the utter lack of probable cause for both her arrest and detention, Plaintiff spent more than 22 hours at the Detention Center.

65. Most of this time was spent on a thin, hard, metal bench, in an inordinately cold group jail cell, after a brutal felony assasult. Despite her obvious wounds which required both prescription medication and wound dressing care, in regards to her injuries, Plaintiff was treated with callous deliberate indifference by Jerry Doe 1-10.

66. In addition, when Plaintiff was suddenly and inexplicably released on September 17, 2018, missing from her returned property were three prescription medications. These pill bottles, medications prescribed by a Department of Veterans Affairs physician the previous week, had been in a small zippered pocket of Plaintiff's purse. Plaintiff's immediate inquiries to Jerry Doe 1-10 on-site at the Detention Center, as well as follow up calls and emails to OPPD, specifically to Officer Rosas, as well as to the Detention Center, were rebuffed. One of pills bottles stolen by OPPD officers and/or Detention Center officers contained Adderall, a Schedule II controlled substance.

67. The intentional and malicious actions of the Defendants caused Plaintiff an untold amount of logistical costs as she fled from the Kansas City area immediately upon her release from the Detention Center on September 17, 2018. Because of the extreme nature of her physical and mental injuries, Plaintiff could not bring herself to even visit her hometown or her family for close to two and a half years.

68. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer damage to her reputation, with attendant emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity;

has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, as well as other economic hardships; and attorneys fees and costs.

69. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff.

## COUNT I
## UNLAWFUL ARREST AND DETENTION
## 42 U.S.C. § 1983
## Fourth and Fourteenth Amendments
## (Against Defendants Rosas, Hawkins, John Doe 4, John Doe 5, Jerry Doe 1-10)

70. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

71. There was no probable cause to arrest Plaintiff on September 16, 2018. There was not a single fact or piece of evidence, despite an overall wealth of information available to aid an objectively reasonable officer's probable cause determination, that Plaintiff had or was committing a crime.

72. No objectively reasonable officer or officers could have believed there were sufficient facts to justify Plaintiff's arrest.

73. Plaintiff's arrest was unlawful and violated her constitutional right to be free from unreasonable search and seizure under the 4th and 14th Amendments to the United States Constitution.

74. Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 knew or should have known that there is a clearly established prohibition against an arrest and a detention without probable cause and that their actions violated Plaintiff's constitutional rights.

75. Also, the manner in which Plaintiff was seized was extraordinary, and violated her 4th Amendment rights, as it was unusually harmful to her privacy and physical interests.

76. The acts and omissions of Defendants were under color of state law.

77. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

78. The actions and omissions of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 constituted the policy, custom, and practice of Defendant OPPD.

79. The acts and omissions of Defendants Jerry Doe 1-10 constituted the policy, custom, and practice of Defendant Johnson County.

80. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

81. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT II**
**DENIAL OF SUBSTANTIVE DUE PROCESS**
**42 U.S.C. § 1983**
**Fifth and Fourteenth Amendments**
**(Against Defendants Rosas, Hawkins, John Doe 4, John Doe 5, Jerry Doe 1-10)**

82. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

83. The conduct of the Defendants as hereinabove alleged for arresting and detaining Plaintiff overnight without probable cause, when no reasonable officer would

believe she did or was committing a criminal offense, violated her Fifth and Fourteenth Amendments rights to substantive due process under the Constitution of the United States.

84. The Defendants knew or should have known that detaining the Plaintiff in the absence of probable cause violated Plaintiff's constitutional right to substantive due process of law.

85. The acts and omissions of Defendants were under color of state law.

86. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

87. The actions and omissions of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 constituted the policy, custom, and practice of Defendant OPPD.

88. The acts and omissions of Defendants Jerry Doe 1-10 constituted the policy, custom, and practice of Defendant Johnson County.

89. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

90. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT III**
**DENIAL OF PROCEDURAL DUE PROCESS**
**42 U.S.C. § 1983**
**Fifth and Fourteenth Amendments**
**(Against Defendant Glasser)**

91. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

92. Plaintiff was kept overnight at the Detention Center in order to see a judge the next day because of the domestic nature of her alleged crime.

93. Plaintiff was told countless times by Jerry Doe 1-10 that she would see a judge at either 12:00pm or 1:00pm on September 17, 2018.

94. Plaintiff prepared arguments to make in order to declare her innocence to judge, if given the opportunity.

95. Plaintiff was suddenly released less than 30 minutes before she was scheduled to be taken before a judge.

96. The arrest and overnight detention are a deprivation of a constitutionally protected interest in liberty. Because of this deprivation, adequate process was necessary for Plaintiff to receive.

97. The Fifth and Fourteenth Amendments require that Plaintiff receives adequate process.

98. There are also federal and state statutory and adminstrative safeguards effecting the deprivation.

99. Plaintiff received no process when she was suddenly released without having seen a magistrate.

100. Plaintiff was never provided information or an explanation, at the time of her release or henceforth.

101. Plaintiff was never given the opportunity to defend herself or clear her name.

102. Under information and belief, Defendant Glasser was responsible for Plaintiff's sudden release, denying her right to process in violation of her constitutional rights.

103. Defendant Glasser knew or should have known that, because of her arrest and detention, she had a right to adequate process.

104. The acts and omissions of Defendant were under color of state law.

105. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

106. The actions and omissions of Defendant Glasser constituted the policy, custom, and practice of the Office of the District Attorney.

107. The acts and omissions of the Defendant were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

108. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT IV**
**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**First Amendment to the Constitution of the United States**
**(Against Defendant Hawkins)**

109. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

110. When Defendant Hawkins was driving Plaintiff to the Detention Center, as she was handcuffed in the back of a police car, she questioned repeatedly why she was being arrested.

111. Defendant Hawkins said clearly that he did not like Plaintiff's voice or questions, and called them annoying "just like last time." It was clear Officer Hawkins was retaliating against Plaintiff for merely speaking with him when he'd previously responded to a call where she'd been victimized.

112. The First Amendment to the United States Constitution guarantees Plaintiff the right to freedom of speech. Plaintiff's right to freedom of speech is further protected by 42 U.S.C. § 1983, which imposes liability on any person acting under color or state law who deprives Plaintiff of her right to freedom of speech.

113. Plaintiff was engaged in a constitutionally protected activity when she spoke with Defendant Hawkins during their first encounter.

114. Defendant's actions and omissions, which led to Plaintiff's arrest without probable cause, when no reasonable and prudent officer could have believed she had or was committing a crime, caused the Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

115. It is clear based on Defendant Hawkins statements directly to Plaintiff that his adverse action against Plaintiff was substantially motivated as a response to the Plaintiff's constitutionally protected conduct during their first encounter.

116. The acts and omissions of Defendant were under color of state law.

117. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

118. The actions and omissions of Defendant Hawkins constituted the policy, custom, and practice of the Office of the District Attorney.

119. The acts and omissions of the Defendant were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

120. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT V**
**CONSPIRACY**
**42 U.S.C. § 1983**
**(Against Defendants Rosas, Hawkins, John Doe 4, John Doe 5)**

121. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

122. Defendants Rosas, Hawkins, John Doe 4, and John Doe 5, as a result of mutual understanding and a meeting of the minds as demonstrated in the allegations set forth above, determined they were going to arrest Plaintiff.

123. Defendants Rosas, Hawkins, John Doe 4, John Doe 5, together and under color of state law, reached a mutual understanding, acted in agreement, and engaged in a course of conduct to deprive Plaintiff of her constitutional rights.

124. Defendants Rosas, Hawkins, John Doe 4, and John Doe 5, together and under color of state law, reached mutual understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiff of her constitutional rights.

125. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

126. The actions and omissions of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 constituted the policy, custom, and practice of Defendant OPPD.

127. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

128. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT VI**
**MALICIOUS PROSECUTION**
**42 U.S.C. § 1983**

**(Against Rosas, Hawkins, John Doe 4, John Doe 5)**

129. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

130. A reasonable and prudent office would have been well aware that there was no probable cause for Plaintiff's arrest.

131. Still, Defendants Rosas, Hawkins, John Doe 4, and John Doe 5, working in conjucntion, procured the arrest of Plaintiff when she willingly arrived at the police station, half a day after the incident, under the guise of signing a Notice to Appear.

132. The Defendants acted with malice; their purpose was not to secure the proper adjudication of criminal proceedings as no reasonable and prudent office would believe Plaintiff had or was committing a criminal offense.

133. Still, Plaintiff was arrested and transported to Detention Center, where she stayed for more than 22 hours. Most of this time was spent on a thin, hard, metal bench, in a inordinately cold group jail cell, after a brutal felony assault.

134. No criminal proceedings were initated, however, *i.e.*, the proceedings terminated in favor of the Plaintiff.

135. The acts and omissions of Defendants were under color of state law.

136. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

137. The actions and omissions of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 constituted the policy, custom, and practice of Defendant OPPD.

138. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

139. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT VII**
**ABUSE OF PROCESS**
**42 U.S.C. § 1983**
**(Against Defendant Glasser)**

140. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

141. After her wrongful arrest, an arrest completely devoid of probable cause that no reasonable officer could believe was lawful, Plaintiff was transported to and detained overnight at the Detention Center in order to see a judge the next day because of the domestic nature of her alleged crime.

142. Plaintiff was told countless times that she would see a judge on September 17, 2018.

143. Plaintiff was suddenly released less than 30 minutes before she was scheduled to be taken before a judge.

144. Plaintiff later learned that Kathleen, who had been arrested for felony domestic assault, had also been suddenly released and never appeared before a magistrate.

145. Upon information and belief, Defendant Glasser was responsible for the release of both Plaintiff and Kathleen, despite their alleged dual statuses as both a perpetrator and victim of a violent domestic crime.

146. Plaintiff had a constitutional right to see a magistrate after such an incredible restriction on her liberty.

147. Plaintiff was never able to see a magistrate, or given an opportunity to be heard, answer the allegation of a crime, or rightfully clear her name. Despite her arrest and detention, she was afforded absolutely no process.

148. This flagrant violation of Plaintiff's constitutional rights were directly due to Defendant Glasser's actions and omissions.

149. Defendant Glasser's actions and omissions were an irregular, illegal, improper, and/or perverted use of the criminal procedure process.

150. Defendant Glasser's use of the criminal procedure process was neither authorized nor warranted by the criminal procedure process in the state of Kansas.

151. Defendant Glasser had an ulterior purpose or motive for the irregular, illegal, improper, and/or perverted use of the criminal procedure process.

152. Plaintiff suffered damages as a result of Defendant Glasser's irregular, illegal, improper, and/or perverted use of the criminal procedure process.

153. The acts and omissions of Defendant were under color of state law.

154. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety,

and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

155. The acts and omissions of the Defendant were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

156. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT VIII**
**VIOLATIVE POLICIES, PROCEDURES, AND PRACTICES**
**42 USC § 1983**
***Monell v. Department of Social Services of the City of New York***
**(Against Defendants OPPD, Donchez, Howe, Glasser, Johnson County, Hayden)**

157. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

158. Because the acts and omissions of Defendants OPPD, Office of the District Attorney, and Johnson County were adopted and carried out by the highest decision-making authorities – respectively, Defendant Donchez; Defendant Howe and Glasser; and Defendant Hayden – said acts and omissions constituted the policy, custom, and practice of OPPD, the Office of the District Attorney, and Johnson County.

159. Alternatively, there exists within the Defendant OPPD, Office of District Attorney, and Johnson County employee hiring, training, supervision, and retention policies, procedures, and practices that they constitute the policy of the OPPD, Office of the District Attorney, and Johnson County, and were the moving force behind and thereby caused the constitutional deprivations suffered as herein alleged; alternatively, there has been a failure to adopt employee hiring, training, supervision, and retention

policies, practices, and procedures which would have prevented the constitutional deprivations suffered by Plaintiff as herein alleged.

160. Defendants OPPD and Donchez, Office of the District Attorney and Howe and Glasser, and Johnson County and Hayden, are vested with the authority to establish employee hiring, training, supervision, and retention policies, procedures, practices, and usages of and for OPPD, Office of the District Attorney, and Johnson County, as are required for the lawful and effective administration of OPPD, the Office of the District Attorney, and Johnson County, and the safety and protection of citizens. Defendants OPPD and Donchez, the Office of the District Attorney and Howe and Glasser, and Johnson County and Hayden, have failed to establish and administer hiring, training, supervision, and retention policies, procedures, practices, and usages in a manner calculated to assure that OPPD, the Office of the District Attorney, and Johnson County do not present a risk or unnecessarily increase the risk of constitutional violations of the rights of citizens.

161. Defendants OPPD and Donchez, the Office of the District Attorney and Howe and Glasser, and Johnson County and Hayden were aware of the hiring, training, supervision, and retention policies, procedures, practices and usages of OPPD, the Office of the District Attorney, and Johnson County and knew or should have known that the hiring, training, supervision, and retention policies, procedures, practices, and usages for OPPD, Office of the District Attorney, and Johnson County, or the absence of same, presented a risk and/or unnecessarily increased the risk of constitutional violations of the rights of citizens.

162. Defendants OPPD and Donchez, the Office of the District Attorney and Howe and Glasser, and Johnson County and Hayden are in a position to establish informal policies, procedures, practices, and usages and to recommend to OPPD, the Office of the District Attorney, and Johnson County formal policies, procedures,

practices, and usages which prevent constitutional violations such as that suffered by Plaintiff.

163. The failure of Defendants OPPD and Donchez, the Office of the District Attorney and Howe and Glasser, and Johnson County and Hayden to affirmatively act in the face of policies, procedures, practices, and usages which resulted in constitutionally violative conduct establishes a policy to condone and otherwise tolerate constitutionally violative conduct in general and specifically, the constitutionally violative conduct alleged herein. If Defendants had acted properly, the constitutional deprivations suffered by Plaintiff would not have occurred.

164. In their failures as heretore described, Defendants intentionally disregarded known facts or, alternatively, were deliberately indifferent to a risk of constitutional violations of which they knew or should have known and their culpability caused the constitutional violations suffered by Plaintiff.

165. As a direct and proximate result, Plaintiff was damaged, as alleged *supra* in paragraph 68.

166. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

167. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT IX**
**FAILURE TO TRAIN/INADEQUATE TRAINING**
**42 USC § 1983**
**(Against Defendants OPPD, Donchez, Howe, Johnson County, Hayden)**

168. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

169. Defendants OPPD and Donchez, Howe, Johnson County and Hayden had the authority to train, supervise, discipline, and otherwise control, respectively, Defendant OPPD Officers, Defendant Glasser, the Defendant Jerry Doe 1-10.

170. Defendants had a duty to train subordinates under their supervision.

171. Defendants had a duty to provide reasonable training and adequate training to prevent the subordinates from violating Plaintiff's constitutional rights.

172. Defendants failed to train or inadequately trained those under their supervision in a manner that reasonable police chiefs, district attorneys, and county sheriffs would have under the circumstances.

173. The failure of Defendants to provide reasonable and adequate training to prevent those under their supervision from violating Plaintiff's constitutional rights amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the acts and omissions of those under their supervision.

174. The failure of Defendants to adequately train the Defendants proximately caused injury to Plaintiff.

175. Plaintiff has been damaged as a direct and proximate result of the defendants; actions and failure to act.

176. Defendants OPPD and Donchez, Howe, Johnson County and Hayden each failed to exercise reasonable care in training their subordinates, respectively, Defendant OPPD officers, Defendant Glasser, and Defendants Jerry Doe 1-10, was willful, wanton, reckless, and malicious, and further, shows a complete and deliberate indifference to, and conscious disregard for, the rights of Plaintiff. Therefore, Plaintiff is

entitled to an award of punitive and exemplary damages against Defendants in an amount sufficient to punish Defendants or to deter Defendants and other from like conduct in the future.

177. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT X**
**FAILURE TO SUPERVISE/INADEQUATE SUPERVISION**
**42 USC § 1983**
**(Against Defendants OPPD, Donchez, Howe, Glasser, Johnson County, Hayden)**

178. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

179. Defendants OPPD and Donchez, Howe, and Johnson County and Hayden Sheriff had the authority to train, supervise, discipline, and otherwise control, respectively, the officers of OPPD; Glasser; and Jerry Doe 1-10.

180. Each Defendant had a duty to control, direct, and supervise the conduct of their respective subordinates.

181. Defendants had a duty to exercise reasonable care to prevent their respective subordinates officers from violating Plaintiff's constitutional rights.

182. Defendants failed to exercise the proper degree of control and supervision of their respective subordinates that reasonable governmental entities, police departments, district attorneys, sheriffs, police chiefs, and governmental officials would have exercised under the circumstances.

183. The failure of Defendants to provide reasonable and adequate supervision to prevent their respective subordiunates from violating Plaintiff's constitutional rights amounts to a custom and demonstrated deliberate indifference to or tacit authorization of the acts and omissions of their respective subordinates.

184. The failure of Defendants to adequately train their subordinates proximately caused injury to Plaintiff.

185. Plaintiff has been damaged as a direct and proximate result of the defendants' actions and failure to act.

186. Defendants OPPD and Donchez, Howe, Johnson County and Hayden each failed to exercise reasonable care in training their subordinates, respectively, Defendant OPPD officers, Defendant Glasser, and Defendants Jerry Doe 1-10, was willful, wanton, reckless, and malicious, and further, shows a complete and deliberate indifference to, and conscious disregard for, the rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive and exemplary damages against Defendants in an amount sufficient to punish Defendants or to deter Defendants and other from like conduct in the future.

187. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT XI**
**FALSE ARREST AND IMPRISONMENT**
**(Against Defendants Rosas, Hawkins, John Doe 4, John Doe 5)**

188. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

189. Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 willfully and unlawfully, aiding and abetting each other, and under color of legal authority restrained and arrested Plaintiff and/or instigated, caused, or procured the restraint and arrest of Plaintiff against her will.

190. The restraint and arrest of Plaintiff against her will was unlawful.

191. There was no probable cause to arrest Plaintiff and no reasonable officer could believe Plaintiff had or was committing a criminal offense.

192. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

193. The actions and omissions of Defendants Rosas, Hawkins, John Doe 4, and John Doe 5 constituted the policy, custom, and practice of Defendant OPPD.

194. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

195. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT XII**
**TORT OF OUTRAGE**
**(Against All Defendants)**

196. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

197. The conduct of all Defendants was extreme, outrageous, beyond the bounds of decency, and utterly intolerable in a civilized society. Further, Defendants acted intentionally or in reckless disregard of Plaintiff when engaging in such conduct.

198. As a proximate cause of the acts and omissions of Defendants as set forth in this Count XII, the Plaintiff was damaged.

199. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

200. The outrageous conduct of each Defendant caused Plaintiff severe and extreme mental distress, beyond that which a reasonable person should be expected to endure.

201. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

202. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT XIII**
**INVASION OF PRIVACY – FALSE LIGHT**
**(Against Defendants OPPD, Donchez, Rosas, Hawkins, John Doe 4, John Doe 5, Howe, Glasser, Johnson County, Hayden, Jerry Doe 1-10)**

203. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

204. By arresting Plaintiff without probable cause and detaining her overnight, Defendants represented Plaintiff in a false light as a criminal and perpetrator of a violent crime.

205. By publishing publicly on a website that Plaintiff had been arrested for misdemeanor domestic assault (first offense), Defendants represented Plaintiff in a false light as a criminal and perpetrator of a violent crime.

206. Being falsely represented to be a criminal and perpetrator of a violent crime is highly offensive to Plaintiff and has caused her mental suffering, shame, and humiliation.

207. Being falsely represented as a criminal and perpetrator of a violent crime would be highly offensive to a reasonable person.

208. Plaintiff did not consent to having her arrest publicized or to being falsely represented to the public as a criminal and perpetrator of a violent crime.

209. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

210. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

211. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT XIV**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(Against All Defendants)**

212. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

213. Over the course of a four-month period, multiple and various Defendants intentionally interfered in the solitude and seclusion of Plaintiff's physical being, as well as intentionally pried into her private affairs and/or concerns.

214. A reasonable person would be highly offended by the privacy intrusions Plaintiff was forced to endure by Defendants.

215. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

216. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and

deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

217. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**COUNT XV**
**INVASION OF PRIVACY – PUBLICITY GIVEN TO PRIVATE FACTS**
**(Against Defendants OPPD, Donchez, Rosas, Hawkins, John Doe 4, John Doe 5, Howe, Glasser, Johnson County, Hayden, Jerry Doe 1-10)**

218. All preceding paragraphs are hereby incorporated by reference as if fully set forth therein.

219. By publishing publicly on a website that Plaintiff had been arrested for misdemeanor domestic assault (first offense), Defendants gave publicity to a matter concerning her private life, despite that the arrest was wrongful and completely lacking in probable cause, and despite that no criminal proceedings were initiated.

220. By publicly providing this information regarding represented Plaintiff in a false light as a criminal and perpetrator of a violent crime.

221. Being falsely represented to be a criminal and perpetrator of a violent crime is highly offensive to Plaintiff and has caused her mental suffering, shame, and humiliation.

222. Being falsely represented as a criminal and perpetrator of a violent crime would be highly offensive to a reasonable person.

223. Plaintiff did not consent to having her arrest publicized or to being falsely represented to the public as a criminal and perpetrator of a violent crime.

224. Plaintiff's arrest and detention record is not of legitimate concern to the public.

225. As alleged, *supra* paragraph 68, Plaintiff experienced fear and apprehension, humiliation, embarassment, mental distress, insult, inconvenience, anxiety, and emotional pain and suffering. She suffers and will continue to suffer psychological trauma, fear, mental pain and suffering, impacting her personal and professional life.

226. The acts and omissions of Defendants were driven by an evil motive or intent, or were willful, wanton, reckless, and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from like conduct in the future.

227. Plaintiff is entitled to recover her reasonable attorney fees and expenses, as provided by 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

228. That this Court assume jurisdiction of this cause to determine this controversy and set this case for hearing on the merits.

229. The award of compensatory damages to the Plaintiff in the amount of $5,000,000.00.

230. The award of punitive damages against the individual Defendants, jointly and severally, in the amount of $2,000,000.000.

231. The award by this Court, pursuant to 42 U.S.C. § 1988, of reasonable attorneys' fees, as well as cost and expenses, and also to grant such alternative relief as may seem to the Court just, proper and equitable.

Respectfully submitted,

/s/ Shauna McRoberts
PRO SE PLAINTIFF
7814 Robinson Street
Overland Park, KS 66204
P: (862) 347-9860
E: sjmcroberts@gmail.com