IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAUNA MCROBERTS,

     **Plaintiff,**

**v.**

                                   **Case No. 21-2470-DDC-TJJ**

KENDRICK ROSAS, DYLAN HAWKINS,
and PETE GLASSER,

     **Defendants.**

_____

<u>**MEMORANDUM AND ORDER**</u>

Pro se plaintiff Shauna McRoberts[1] brings this action against Overland Park Police

Department Officers Kendrick Rosas and Dylan Hawkins and Johnson County, Kansas Assistant

District Attorney Pete Glasser.  *See generally* Doc. 54 (First Am. Compl.).  She claims civil

rights violations under 42 U.S.C. § 1983 based on an allegedly unlawful arrest and detention.  *Id.*

Defendants Rosas and Hawkins have filed a Motion to Dismiss, asking the court to dismiss

plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a plausible

claim.  Doc. 60.  Defendant Glasser also has filed a Motion to Dismiss, asking the court to

---

[1]     Plaintiff has filed this lawsuit pro se.  Generally, courts must construe pro se pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings "liberally" and hold them to "a less stringent standard than formal pleadings drafted by lawyers").  But here, although plaintiff proceeds pro se, she asserts that she is a "licensed attorney in the state of Missouri, in good standing." Doc. 54 at 5 (First Am. Compl. ¶ 12).  Our Circuit "has repeatedly declined to extend the benefits of liberal construction to pro se pleadings filed by attorneys who have chosen to represent themselves." *Tatten v. City & Cnty. of Denver*, 730 F. App'x 620, 624–25 (10th Cir. 2018) (citations omitted); *see also Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, the same courtesy need not be extended to licensed attorneys." (citations omitted)).  Consistent with this governing authority and plaintiff's assertion that she is a licensed attorney, the court doesn't apply the liberal construction standard to plaintiff's filings here.

dismiss plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6).[2]  Doc. 62.  For

reasons explained below, the court grants both motions.

## I.    Factual Background

The following facts come from plaintiff's First Amended Complaint (Doc. 54).[3]  The

court accepts them as true and views them in the light most favorable to plaintiff.  *Doe v. Sch.*

*Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the

court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in

the light most favorable to" plaintiff (citation and internal quotation marks omitted)).

On September 15, 2018, around 11:15 p.m., plaintiff encountered her sister outside of her

parents' home.  Doc. 54 at 5–6 (First Am. Compl. ¶¶ 13, 21).  Her sister's contact with plaintiff

---

[2]      Defendant Glasser's motion also moves, in the alternative, for dismissal under Fed. R. Civ. P.
12(b)(1) for lack of subject matter jurisdiction.  Doc. 62 at 1.  Defendant Glasser asserts four arguments
supporting dismissal of plaintiff's claims:  (1) the statute of limitations bars the claims; (2) defendant
Glasser is entitled to absolute prosecutorial immunity; (3) defendant Glasser is entitled to qualified
immunity; and (4) plaintiff's First Amended Complaint fails to state a plausible claim for relief against
defendant Glasser.  *Id.*  Each of these four arguments is a defense against liability under Rule 12(b)(6),
not a jurisdictional defense under Rule 12(b)(1).  *See, e.g.*, Fed. R. Civ. P. 12(b)(6) (permitting a party to
assert by motion a defense based on "failure to state a claim upon which relief can be granted"); *Herrera
v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (explaining that "statute of limitations defense
may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear
that the right sued upon has been extinguished" and applying the Rule 12(b)(6) standard to review of
district court's dismissal on statute of limitations grounds (citations and internal quotation marks
omitted)); *Warnick v. Cooley*, 895 F.3d 746, 751–752 (10th Cir. 2018) (affirming dismissal of plaintiff's
§ 1983 claims under Rule 12(b)(6) based on absolute prosecutorial immunity); *Brown v. Montoya*, 662
F.3d 1152, 1162–63 (10th Cir. 2011) (reviewing district court's denial of motion to dismiss based on
quality immunity grounds under Rule 12(b)(6) standard); Charles Alan Wright & Arthur R. Miller, 5B
*Federal Practice and Procedure* § 1350 (3d ed. 2019) ("The defense of qualified or judicial immunity has
also been held to be properly raised via Rule 12(b)(6) rather than Rule 12(b)(1), although one can find
courts not being too particular about the distinction.").  Thus, the court applies the Rule 12(b)(6) standard
to defendant Glasser's motion.

[3]      Plaintiff's First Amended Complaint (Doc. 54) supersedes her original Complaint (Doc. 1).  *See
Ramirez v. Collier*, 142 S. Ct. 1264, 1276 (2022) ("'As a general rule, when a plaintiff files an amended
complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-
existent.'" (quoting *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010)); *see Mink v. Suthers*, 482
F.3d 1244, 1254 (10th Cir. 2007) ("[A]n amended complaint supercedes an original complaint and
renders the original complaint without legal effect[.]" (citation and internal quotation marks omitted)).

violated a no-contact order.  *Id.*  Plaintiff asserts that she secured the court-ordered no-contact order to protect her from abuse or harassment while her sister faced felony identity theft charges for using plaintiff's identity.  Doc. 54 at 5–6 (First Am. Compl. ¶¶ 14–16, 21).   *Id.*

Plaintiff spoke calmly with her sister on the street, but "suddenly and with no provocation at all," her sister pinned plaintiff in her vehicle, gunned the accelerator, and dragged her down the street.  *Id.* at 6 (First Am. Compl. ¶ 22).  Her sister eventually released plaintiff by opening the car door, causing plaintiff's body to fall free.  *Id.*  And then, her sister fled in the vehicle.  *Id.* (First Am. Compl. ¶ 23).

Plaintiff asserts that she never touched or had any physical contact with her sister.  *Id.* (First Am. Compl. ¶ 24).  After her sister fled, plaintiff ran into her parents' house and plaintiff's step-father called 911.  *Id.* (First Am. Compl. ¶ 25).  Overland Park Police Department Officer Kendrick Rosas arrived at the house around 11:20 p.m.  *Id.* (First Am. Compl. ¶ 26).  Plaintiff told Officer Rosas about the events that just had transpired and answered his follow-up questions.  *Id.* (First Am. Compl. ¶ 27).  Officer Rosas arrested plaintiff's sister for aggravated domestic battery shortly after the incident.  *Id.* (First Am. Compl. ¶ 29).

An ambulance then transported plaintiff to Overland Park Regional Hospital where she was admitted to the Emergency Room at 12:17 a.m. on September 16, 2018.  *Id.* (First Am. Compl. ¶ 28).  Plaintiff had a CT scan and several X-rays.   *Id.* (First Am. Compl. ¶ 30).  She had abrasions on her scalp, right shoulder, right elbow, right thigh, right foot, left thumb, and left big toe.  *Id.*  Medical personnel treated plaintiff for road rash, prescribed her medication, and gave her instructions about wound care.  *Id.* at 7 (First Am. Compl. ¶ 32).  At 2:32 a.m. on September 16, 2018, the hospital discharged plaintiff.  *Id.*

When she was at the hospital, Officer Rosas again questioned plaintiff. *Id.* at 6 (First Am. Compl. ¶ 31).  Plaintiff again told Officer Rosas exactly how the incident with her sister had occurred and answered all his follow-up questions.  *Id.*

At 6:48 a.m. on September 16, 2018, Officer Rosas called plaintiff and asked her to come to the police station to sign a Notice to Appear.  *Id.* at 7 (First Am. Compl. ¶ 33).  Later that day, around 12:40 p.m., plaintiff arrived at the police station.  *Id.* (First Am. Compl. ¶ 34).  Plaintiff asserts that she had "obvious and apparent" injuries and was "in an extreme amount of pain." *Id.* (First Am. Compl. ¶ 35).  Plaintiff waited in a public waiting area until Officer Hawkins met her there around 1:00 p.m.  *Id.* (First Am. Compl. ¶ 36).

Plaintiff alleges on "information and belief" that Officer Rosas dispatched or directed Officer Hawkins to the police station to arrest plaintiff.  *Id.* (First Am. Compl. ¶ 37).  Officer Hawkins told plaintiff that he was arresting her for misdemeanor domestic battery.  *Id.* (First Am. Compl. ¶ 40).  Officer Hawkins asked plaintiff to stand up, took her purse, and then handcuffed her hands behind her back.  *Id.*  Plaintiff asserts that no probable cause existed to arrest her on September 16, 2018.  *Id.* at 8 (First Am. Compl. ¶ 44).  Plaintiff also alleges that she never made physical contact with her sister and that her sister attacked her without provocation.  *Id.* (First Am. Compl. ¶ 42).  Plaintiff was in shock, felt terrified and desperate, and found her public arrest embarrassing, stressful, and humiliating.  *Id.* (First Am. Compl. ¶ 43).

After plaintiff's arrest, Officer Hawkins transported her in his police car to the Johnson County Detention Center in Olathe, Kansas.  *Id.* (First Am. Compl. ¶ 48).  Officer Hawkins refused to tell plaintiff why he had arrested her, despite repeated inquiries.  *Id.* at 8–9 (First Am. Compl. ¶ 49).  At 1:47 p.m. on September 16, 2018, plaintiff was booked into the Detention Center.  *Id.* at 9 (First Am. Compl. ¶ 55).  Plaintiff was scheduled to appear before a Johnson

County District Court judge at 1:30 p.m. on September 17, 2018. *Id.* at 10 (First Am. Compl. ¶ 62). But, shortly before her scheduled hearing, plaintiff was released from the Detention Center at 12:49 p.m. on September 17, 2018, without explanation and without seeing a judge. *Id.* (First Am. Compl. ¶ 63).

Plaintiff alleges that Assistant District Attorney Pete Glasser declined to prosecute her and ordered her release on September 17, 2018. *Id.* at 11 (First Am. Compl. ¶ 64). Before plaintiff's release from the Detention Center, she had spent almost 24 hours in custody. *Id.* (First Am. Compl. ¶ 65). Plaintiff alleges that ADA Glasser also declined to prosecute her sister, who was arrested for felony domestic battery. *Id.* (First Am. Compl. ¶ 71).

## II.     Procedural Background

Plaintiff filed this lawsuit on October 18, 2021. Doc. 1. Her original Complaint asserted various § 1983 and Kansas tort claims against Officers Rosas and Hawkins and ADA Glasser, as well as several other defendants. *Id.* at 16–28, 30–36 (Compl. ¶¶ 70–167, 178–227).

On January 10, 2022, plaintiff filed a First Amended Complaint as a matter of right under Fed. R. Civ. P. 15(a)(1)(B). Doc. 54. Plaintiff's First Amended Complaint asserts three claims against three defendants: (1) a § 1983 claim asserting false arrest and imprisonment violating the Fourth and Fourteenth Amendments to the United States Constitution against Officers Rosas and Hawkins in their individual capacities (Count I) (Doc. 54 at 2, 16–18 (First. Am. Compl. ¶¶ 2–3, 98–118)); (2) a § 1983 claim asserting abuse of process violating the Fourteenth Amendment against ADA Glasser in his individual capacity (Count II) (Doc. 54 at 2, 18–23 (First. Am. Compl. ¶¶ 4, 119–151)); and (3) a § 1983 claim for asserting denial of substantive due process violating the Fourteenth Amendment against Officers Rosas and Hawkins and ADA Glasser in their individual capacities (Count III) (Doc. 54 at 2, 23–26 (First. Am. Compl. ¶¶ 2–4, 152–

164)).  Plaintiff seeks actual, nominal, and punitive damages, as well as her attorney fees and expenses under 42 U.S.C. § 1988.[4]  *Id.* at 26–27 (First Am. Compl. Prayer for Relief).

### III.    Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[4]      Defendants assert that plaintiff cannot recover attorney fees because she is a licensed attorney. As defendants correctly explain, the Supreme Court has held that a pro se litigant who is also a lawyer may not recover an award of attorney's fees under § 1988. *Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991). But, the court doesn't reach the attorney's fee question because plaintiff's claims fail on their merits, as explained below.

IV.     **Analysis**

Defendants assert several arguments supporting dismissal of plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6).  The court addresses each argument, in turn, below.  As explained, the arguments provide separate and independent reasons to dismiss plaintiff's First Amended Complaint.

A.  **The statute of limitations bars plaintiff's § 1983 claims against all three defendants.**

All three defendants assert that the statute of limitations bars plaintiff's § 1983 claims.  The statute limiting § 1983 claims "is drawn from the personal-injury statute of the state in which the federal district court sits."  *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citations omitted).  In Kansas, the limitations statute for personal injury claims is two years.  Kan. Stat. Ann. § 60-513(a)(4); *see also Eikenberry v. Seward Cnty., Kan.*, 734 F. App'x 572, 575 (10th Cir. 2018).  So, the court applies Kansas's two-year statute of limitations to plaintiff's § 1983 claims.  Indeed, the parties agree that plaintiff's § 1983 claims are governed by a two-year statute of limitations.  Doc. 61 at 5; Doc. 63 at 7; Doc. 64 at 8.  But, they dispute when that two-year period ended.  So, the court turns to the gist of the real disagreement here— when that two-year clock expired.

When "determin[ing] the date on which the claim accrues and the limitations period starts to run[,]" the court must apply federal law.  *Mondragón*, 519 F.3d at 1082 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  Our Circuit has explained that a Fourth Amendment claim for false arrest or imprisonment "accrues when the plaintiff is released or legal process is instituted justifying that imprisonment" and a Fourteenth Amendment Due Process claim "accrues, at the earliest, when favorable termination occurs" through "acquittal, habeas corpus, voluntary dismissal, etc."  *Id.* at 1083.  Here, plaintiff asserts—and defendants don't dispute—

7

that plaintiff's claims accrued on September 17, 2018—the day ADA Glasser declined to prosecute plaintiff and ordered her release from the Detention Center.  Doc. 64 at 8; *see also* Doc. 54 at 3 (First Am. Compl. ¶ 10) ("The accrual date of [p]laintiff's claims was September 17, 2018.").  Plaintiff didn't file this lawsuit until October 18, 2021—more than two years after her § 1983 claims accrued.  But, plaintiff argues, two tolling provisions save her claims from dismissal.

*First*, plaintiff correctly asserts that the Kansas Supreme Court suspended the running of the statute of limitations on her § 1983 claims for a period of time.  In 2020 and 2021, the Kansas Supreme Court issued several administrative orders suspending "all statutes of limitations" from March 19, 2020 through April 15, 2021.  *See* Administrative Order 2020-PR-032 at 6 (Kan. Apr. 3, 2020), *available at* https://www.kscourts.org/Rules-Orders/Orders; *see also* Administrative Order 2021-PR-020 at 2 (Kan. Mar. 30, 2021) (lifting suspension of time limitations on April 15, 2021).  On the day when this suspension ended, "a person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended."  Kan. Stat. Ann. § 20-172(d)(1).

Defendants don't dispute that the Kansas Supreme Court's administrative orders suspending the statute of limitations apply to plaintiff's § 1983 claims.[5]  Instead, they argue, plaintiff's claims still are untimely even with the benefits of this suspension.  They're right. From the time that plaintiff's claims accrued on September 17, 2018, to the Kansas Supreme Court's suspension of the statute of limitations on March 19, 2020, a total of 548 days elapsed.

---

[5]      Indeed, our court previously has applied "Kansas's pandemic-related tolling rule" to permit "otherwise time-barred § 1983 claims to proceed."  *Fullen v. City of Salina, Kan.*, No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *8 (D. Kan. Sept. 30, 2021); *see also Tran v. Cnty. of Douglas*, No. 21-2310-KHV, 2021 WL 5505455, at *6 (D. Kan. Nov. 24, 2021) (applying "tolling rules which Kansas instituted in response to the COVID-19 pandemic" to plaintiff's § 1983 claims and finding them timely asserted).

Thus, when the statute of limitations resumed on April 15, 2021, plaintiff had 182 days remaining to file her claims within the statute of limitations.  *See* Kan. Stat. Ann. § 20-172(d)(1) (providing that on the day that the suspension ended, "a person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended").  The calendar math required by this suspension period means that plaintiff's deadline for filing her § 1983 claims was October 14, 2021.[6]  And, when she filed her Complaint in this lawsuit on October 18, 2021, she was four days out of time.  But, as explained in the next paragraph, plaintiff asserts yet another tolling doctrine saves her claims.

*Second*, plaintiff argues that the tolling provisions of Kan. Stat. Ann. § 60-515(a) apply to save her § 1983 claims from dismissal.  That statute provides:

> [I]f any person entitled to bring an action . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is . . . an incapacitated person . . . such person shall be entitled to bring such action within one year after the person's disability is removed[.]

Kan. Stat. Ann. § 60-515(a).  Plaintiff alleges that she was "incapacitated, *i.e.*, legally disabled," beginning February 10, 2021, "when she was involuntarily committed because of her acute condition by medical professionals" to a VA Medical Center in New Jersey.  Doc. 54 at 3–4 (First Am. Compl. ¶ 10).  She asserts that the "disability was removed" when she was released from the VA hospital on February 17, 2021.  *Id.*  Plaintiff asserts that she timely filed this lawsuit on October 18, 2021—within one year after her disability ended on February 17, 2021.

---

[6]    Here's a recap of that calendar math:  Plaintiff's § 1983 claims accrued on September 17, 2018.  From the September 17, 2018 accrual date to March 18, 2020 (the day before the Kansas Supreme Court pandemic-related tolling order issued), 548 days elapsed.  That means plaintiff had 182 days remaining to file her claims (*i.e.*, 730 days (two years) minus 548 days equals 182 days).  The statute was tolled from March 19, 2020 to April 15, 2021.  Beginning on April 15, 2021, the 182-day time period remaining on plaintiffs' two-year limitations period began running again.  And, it expired 182 days later on October 14, 2021.

Defendants disagree.  They assert that Kan. Stat. Ann. § 60-515(a) simply doesn't apply to the facts pleaded here based on the plain and unambiguous language of that statute.  The Kansas rules of statutory construction[7] require that the court, when "a statute is plain and unambiguous . . . must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be."  *State ex rel. Stovall v. Meneley*, 22 P.3d 124, 143 (Kan. 2001); *see also In re Adoption of H.C.H.*, 304 P.3d 1271, 1277 (Kan. 2013) ("If a statute is plain and unambiguous, there is no need to resort to statutory construction and [Kansas courts] will neither speculate regarding legislative intent nor read the statute to add something not readily found in it.").  Here, the plain language of Kan. Stat. Ann. § 60-515(a) applies only when a person is incapacitated:  "[(1)] at the time the cause of action accrued or[, (2)] at any time during the period the statute of limitations is running."  Kan. Stat. Ann. § 60-515(a).

Plaintiff never alleges that she was incapacitated "at the time the cause of action accrued" on September 17, 2018.  *See id.*  So, the first part of the statute plainly can't save her claims.  Also, plaintiff doesn't allege that she was incapacitated "at any time during the period the statute of limitations *is running*."  *See id.* (emphasis added).  Plaintiff alleges she was incapacitated for seven days from February 10 to 17, 2021.  But, during that time, the statute of limitations wasn't running.  The Kansas pandemic-related tolling orders had suspended the statute.  So, the plain language of the second portion of the statute can't apply to save plaintiff's claims.

Plaintiff persists, arguing that the Kansas courts "repeatedly" have interpreted Kan. Stat. Ann. § 60-515(a) "to stand for the proposition that, as long as the statute of limitations has not yet expired, plaintiffs could meritoriously claim entitlement to the protection afforded by" § 60-

---

[7]  The Tenth Circuit has instructed court to "interpret state laws according to state rules of statutory construction."  *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000).

515(a).  Doc. 64 at 9 (emphasis omitted).  For support, she cites *Lewis v. Shuck*, 623 P.2d 520

(Kan. Ct. App. 1981).  That case doesn't help plaintiff.  To the contrary, it supports defendants'

argument.  In *Lewis*, the plaintiff argued that a second disability—occurring after the statute of

limitations had expired but before the one-year period had ended after a first disability was

removed—tolled the statute of limitations for another year after the second disability was

removed.  *Id.* at 522.  The Kansas Court of Appeals disagreed.  *Id.* at 523–24.  It recognized that

when "the language used in a statute is plain and unambiguous and also appropriate to an

obvious purpose, the court should follow the intent expressed by the words."  *Id.* at 523.  And,

interpreting the plain language of § 60-515(a), the court held that "for the provisions of [Kan.

Stat. Ann. §] 60-515(a) to toll the statute of limitations, a disability prescribed by that statute

must have existed at the time the cause of action accrued *or have come into existence during the*

*period the applicable statute of limitations was running, without regard to any tolling of the*

*statute.*"  *Id.* at 523–24 (emphasis added).  In *Lewis*, the statute of limitations wasn't running

when the plaintiff became disabled for a second time—instead, it had been tolled by § 60-515(a)

based on plaintiff's first disability.  *Id.* at 524.  Thus, the Kansas Court of Appeals held, the plain

language of § 60-515(a) didn't apply to toll the *Lewis* plaintiff's claim.  *Id.*  And so, the court

held that § 60-515(a)'s tolling provision didn't save that plaintiff's claim.

The same reasoning applies here.  The statute of limitations wasn't running when plaintiff

was disabled in February 2021.  Instead, in February 2021, the Kansas pandemic-related tolling

orders already had tolled the statute of limitations.  Based on the plain and unambiguous

language of § 60-515(a), the statute doesn't apply here to make plaintiff's claims timely because

plaintiff's disability did not occur "during the period the statute of limitations [was] running," as

§ 60-515(a) requires.

The parties don't cite—and the court hasn't located in its own research—any Kansas case addressing this precise issue—*i.e.*, whether Kan. Stat. Ann. § 60-515(a) would apply to toll the statute of limitations for one year after plaintiff's disability was removed when that disability both began and ended while the statute of limitations wasn't running but instead occurred while the statute of limitations already was tolled by the Kansas pandemic-related tolling orders.  But, based on the plain and unambiguous language of § 60-515(a), as well as persuasive authority from the Kansas Court of Appeals's opinion in *Lewis v. Shuck*, the court predicts that the Kansas Supreme Court—if presented with this issue—would conclude that § 60-515(a) doesn't apply here to toll plaintiff's claims because the statute of limitations wasn't "running" when plaintiff's disability was removed in February 2021.

Also, and importantly, to interpret the statute as plaintiff suggests—to apply any time the statute of limitations hasn't yet expired—would require the court to construe the Kansas legislature's intent when enacting § 60-515(a) or read words into the statute that aren't there. But Kansas law doesn't permit that when the statute's language is plain and unambiguous, as is the statutory language used by Kan. Stat. Ann. § 60-515(a).  *See In re Adoption of H.C.H.*, 304 P.3d at 1277 ("If a statute is plain and unambiguous, there is no need to resort to statutory construction and this court will neither speculate regarding legislative intent nor read the statute to add something not readily found in it.").

In sum, the court holds that plaintiff's claims are time-barred.  The two-year statute of limitations—with the additional time tolled by the Kansas pandemic-related tolling orders—expired on October 14, 2021.  Plaintiff filed her lawsuit after that date and the statute of limitations thus bars plaintiff's claims.  As a consequence, the court dismisses all three of plaintiff's § 1983 claims because they are untimely.

**B. Defendant Glasser is entitled to absolute prosecutorial immunity.**

Plaintiff's claims against defendant Glasser fail for a second and independent reason. Defendant Glasser is entitled to absolute prosecutorial immunity.

"Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022) (citation and internal quotation marks omitted). A prosecutor enjoys prosecutorial immunity for acts that are "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such activities include "conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process[.]'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430, 431). This prosecutorial immunity is limited, however, to actions that "involve the prosecutor's role as advocate for the State rather than his role as administrator or investigative officer . . . ." *Id.* at 491 (citation and internal quotation marks omitted).

To discern whether a prosecutor deserves absolute immunity in the specific context at issue, courts examine "'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The Supreme Court has emphasized that functions "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Such "acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.*

Here, plaintiff's First Amended Complaint never alleges that defendant Glasser—as an ADA for Johnson County, Kansas—took any actions other than acting as an advocate for the County when he declined to prosecute plaintiff (and her sister).  Plaintiff alleges that ADA Glasser declined to prosecute her and ordered her release from jail.  Doc. 54 at 19 (First Am. Comp. ¶ 126).  Plaintiff alleges that his decisions not to prosecute her and her sister were actions "completely bereft of the professional judgment entrusted to prosecutors." *Id.* (First Am. Compl. ¶ 127).  But she never alleges any facts capable of supporting her *ipse dixit* legal conclusion. Plaintiff may disagree with ADA Glasser's decisions—indeed, she alleges that his decision was "without cause or justification[.]"[8]  *Id.* at 11 (First Am. Compl. ¶ 69).  But, plaintiff also concedes that ADA Glasser made those decisions using his "professional judgment" as a prosecutor when deciding when to initiate a prosecution and when to decline prosecution.  *Id.* at 19 (First Am. Compl. ¶ 127).  These decisions and his actions fall squarely within the kind of conduct that absolute prosecutorial immunity protects.  *See, e.g.*, *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (explaining that absolute prosecutorial immunity applies to "(1) preparation and initiation of charges; (2) prosecuting civil and administrative enforcement proceedings; and (3) investigating and filing a commitment proceeding" (citations omitted)). Because defendant Glasser is entitled to absolute prosecutorial immunity, the court dismisses plaintiff's claims against him for this second and independent reason.

---

[8]     Also, plaintiff alleges, "there is no evidence that ADA Glasser conducted a fair and reliable determination of probable cause in either" her case or her sister's case.  Doc. 12–13 (First Am. Compl. ¶ 81).  This assertion is conclusory, and plaintiff alleges no facts to support it.  To the extent plaintiff asserts that ADA Glasser stepped outside his role as a prosecutor when deciding not to prosecute plaintiff or her sister, her First Amended Complaint alleges no facts capable of supporting a plausible finding or inference that ADA Glasser acted in any role other than that as an advocate for the State of Kansas.

### C.  Plaintiff fails to state plausible claims for relief.

Plaintiff's § 1983 claims fail for another and independent reason.  They fail to state plausible claims for relief.  The court addresses each of plaintiff's three § 1983 claims, in turn, below.

#### 1.  Count I:  § 1983 claim for false arrest and imprisonment violating the Fourth and Fourteenth Amendments (asserted against Officers Rosas and Hawkins)

Plaintiff's Count I asserts a § 1983 claim against Officers Rosas and Hawkins for false arrest and imprisonment.  Defendants argue here that plaintiff fails to allege a plausible § 1983 claim because the First Amended Complaint fails to allege any facts capable of supporting a plausible finding or inference that either Officer Rosas or Officer Hawkins personally participated in a false arrest or imprisonment.

To allege a plausible § 1983 claim against a defendant, plaintiff must allege that the defendant personally caused a constitutional deprivation.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  In contrast, it doesn't suffice to allege conclusory allegations about a defendant's involvement in the constitutional deprivation.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, plaintiff alleges that Officer Rosas responded to her step-father's 911 call at the house, interviewed plaintiff about the incident with her sister at both the house and the hospital,

and asked plaintiff to come to the police statement to sign a Notice of Appear.  None of these facts allege that Officer Rosas personally participated in her arrest or imprisonment.  Instead, the Complaint merely makes conclusory allegations that Officer Rosas was "personally involved" and was "personally responsible for [p]lainitff's wrongful arrest."  Doc. 54 at 8 (First Am. Compl. ¶ 47).  The only fact capable of lending any support to these allegations is the Complaint's assertion made on "information and belief" that "Officer Hawkins was dispatched by Officer Rosas, or at his direction, to the police station to personally arrest [p]laintiff."  Doc. 54 at 7 (First Am. Compl. ¶ 37).  A plaintiff may plead allegations "'on information and belief so long as the complaint sets forth the factual basis of the belief.'"  *Moore v. Kobach*, 359 F. Supp. 3d 1029, 1040 (D. Kan. 2019) (quoting *Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1149 (D. Colo. 2016)); *see also Horocofsky v. City of Lawrence*, No. 20-2529-EFM, 2022 WL 1421554, at *17 (D. Kan. May 5, 2022) ("Certainly, pleading upon information and belief is acceptable *as long as the complaint contains the factual basis for the belief*." (citation and internal quotation marks omitted)); *Jackson-Cobb*, 173 F. Supp. 3d at 1149 ("The Tenth Circuit has held in various contexts that allegations, even allegations of fraud, may be made on information and belief so long as the complaint sets forth the factual basis of the belief." (citing *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992))).

But, here, plaintiff's First Amended Complaint provides no factual basis for her allegation that Officer Rosas dispatched or directed Officer Hawkins to arrest plaintiff at the police station.  Instead, she simply provides her conclusory allegation based on "information and belief."  Doc. 54 at 7 (First Am. Compl. ¶ 37).  That approach can't suffice to state a plausible claim against Officer Rosas.  *See Horocofsky*, 2022 WL 1421554, at *17–18 (dismissing plaintiff's claims based on allegations made on "information and belief" because plaintiff made

"no attempt at all to vouch for this allegation or offer a factual basis for the belief"). *Cf. Moore*, 359 F. Supp. 3d at 1040–41 (declining to dismiss claims premised on allegations asserted on "information and belief" where the complaint asserted "specific facts [to] support the challenged [information and belief] allegations"). In short, plaintiff's allegations here fail to state a plausible § 1983 claim against Officer Rosas for false arrest and imprisonment.

For Officer Hawkins, plaintiff alleges only that he arrested plaintiff at the police station on September 16, 2018. But plaintiff never alleges facts capable of supporting a plausible finding or inference that Officer Hawkins made the probable cause decision to arrest plaintiff. To the contrary, she makes a conclusory and unsupported allegation that Officer Rosas directed Officer Hawkins to arrest her. Our Circuit has recognized that "police officers may ordinarily rely on determinations made by other officers regarding the constitutional legitimacy of police procedures." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). And, "'police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid [had properly determined the existence of] probable cause.'" *Id.* at 1179–80 (quoting *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)). These principles mean that plaintiff here has failed to state a plausible claim against Officer Hawkins because she never alleges that he was involved personally in the probable cause decision to arrest and imprison plaintiff. *See Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (concluding that defendant officer was not "personally involved" in other officer's "decision to detain" plaintiff because defendant officer had arrived late to the scene and relied on the other officer's statement that probable cause existed to detain plaintiff); *see also Archuletta v. City of S. Salt Lake*, No. 2:12-CV-703-TC, 2014 WL 5149298, at *6 (D. Utah Oct. 14, 2014) (holding plaintiff failed to allege an illegal entry claim against an officer "who arrived at the scene ten to

fifteen minutes after other officers had entered the house" because he "was entitled to rely on the representations and acts of the [other] officers").

In sum, the court finds that plaintiff fails to allege a plausible § 1983 claim against either Officer Rosas or Officer Hawkins based on false arrest or imprisonment. The Complaint asserts no facts capable of supporting a finding or inference that either Officer Rosas or Officer Hawkins personally participated in the probable cause decision to arrest and imprison plaintiff.

### 2.  Count II:  § 1983 claim for abuse of process violating the Fourteenth Amendment against ADA Glasser

Plaintiff's Count II alleges a § 1983 claim against ADA Glasser for abuse of process, claiming he violated the Fourteen Amendment. To allege a plausible § 1983 claim for abuse or process, a plaintiff "must plead the common law elements of abuse of process as well as a constitutional violation." *Jackson v. Kan. Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2005 WL 756773, at *5 (D. Kan. Jan. 19, 2005) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)). In Kansas, an abuse of process claim requires plaintiffs to allege "(1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity." *Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980) (citation and internal quotation marks omitted).

Here, plaintiff alleges no facts capable of supporting a plausible finding or inference that ADA Glasser committed an abuse of process. She merely makes conclusory assertions that ADA Glasser's "acts and omissions were an irregular, improper, and perverted use of the criminal procedure process[,]" that his "use of the criminal procedure process was neither authorized nor warranted by the criminal procedure process in the state of Kansas[,]" and that he

18

"had an ulterior purpose or motive for the irregular, [ ]improper, perverted use of the criminal procedure process." Doc. 54 at 20 (First Am. Compl. ¶¶ 128–130). But, the First Amended Complaint never provides any factual basis for any one of these conclusory assertions.

Instead, plaintiff's allegations center on her disagreement with ADA Glasser's decision not to prosecute her and her sister. And, she concedes—at least initially—that ADA Glasser made that decision using "his prosecutorial discretion." *Id.* at 12 (First Am. Compl. ¶ 75). Plaintiff tries to backtrack in her Response to the motion, however, asserting that ADA Glasser doesn't have "unfettered discretion . . . when it comes to the prosecution of domestic violence crimes." Doc. 67 at 18. As support for this statement, she cites a Kansas statute. But unfortunately for plaintiff, this provision merely requires Kansas prosecutors to adopt written policies for the prosecution of crimes related to domestic violence. *See* Kan. Stat. Ann. § 22-2309. So, it can't sustain her burden to allege an "illegal, improper, perverted use of the process[.]" *Porter*, 621 P.2d at 416.

Also, plaintiff asserts that "Attorney General guidance" for domestic violence cases provides that "'charges will be filed in all cases in the District Court where there is sufficient evidence to prosecute.'" Doc. 67 at 18 (quoting Community Protocol for Domestic Violence Cases at 3, Kansas Attorney General's Office, *available at* https://ag.ks.gov/docs/publications/sample-community-protocols.pdf?sfvrsn=c3bdf198_2) (emphasis omitted). But, plaintiff omits the very next sentence in the protocol she quotes. It provides: "The determination that must be made in each case as to its legal sufficiency to be prosecuted will be made by the County Attorney." Community Protocol for Domestic Violence Cases at 3. That's what the First Amended Complaint alleges here—*i.e.*, ADA Glasser made a decision not to prosecute a domestic violence case against either plaintiff or her sister. Plaintiff

is entitled to hold the opinion that ADA Glasser should have proceeded with prosecutions.  But rank or her speculation about ADA Glasser's reasons for declining to prosecute plaintiff or her sister simply can't support a plausible abuse of process claim.  Thus, the court finds plaintiff's Count II fails to state a viable claim under § 1983 claim for abuse of process violating the Fourteenth Amendment.

### 3.   Count III:  § 1983 claim for denial of substantive due process violating the Fourteenth Amendment against all three defendants

Count III asserts a § 1983 claim against all three defendants claiming they denied plaintiff's substantive due process rights under the Fourteenth Amendment.  Plaintiff bases the substantive due process claim against Officers Rosas and Hawkins on her alleged unlawful arrest and detention.  Doc. 54 at 24–25 (First Am. Compl. ¶ 157).  But, the Supreme Court has explained, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The Fourth Amendment recognizes the "right of the people to be secure in their persons . . . against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  So, plaintiff's substantive due process claims based on Officers Rosas and Hawkins's allegedly unlawful arrest and detention of plaintiff fall under that "explicit textual source of constitutional protection"— *i.e.*, the Fourth Amendment.  *See Albright*, 510 U.S. at 273.  Thus, the Fourth Amendment, and "not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003) (citation and

internal quotation marks omitted) (dismissing substantive due process claims that "are more precisely addressed under the Fourth Amendment"); *Progeny v. City of Wichita, Kan.*, No. 6:21-CV-01100-EFM-ADM, 2022 WL 93406, at *14–15 (D. Kan. Jan. 10, 2022) (dismissing substantive due process claim based on various alleged constitutional violations including ones that allegedly occurred during "[e]ncounters with law enforcement, searches of property, and arrests" because those types of alleged constitutional violations "all fall within the explicit terms of" the Fourth Amendment and "claims relating to these alleged violations must therefore be considered under a Fourth Amendment framework, rather than the more general standards of substantive due process"); *see also Hirt v. Unified Sch. Dist. No. 287*, No. 2:17-CV-02279-HLT, 2018 WL 6326412, at *7 (D. Kan. Dec. 4, 2018) (granting summary judgment against substantive due process claims because plaintiff's "First Amendment claim under Count I subsumes any such claim"). For this reason, the court dismisses plaintiff's substantive due process claim against Officers Rosas and Hawkins.

Also, the court dismisses plaintiff's substantive due process claim against ADA Glasser for failing to state a claim. Plaintiff's claim against ADA Glasser is based on his decision not to prosecute plaintiff or her sister. Doc. 54 at 25–26 (First Am. Compl. ¶ 158). A Fourteenth Amendment substantive due process violation "arises when a plaintiff alleges the government deprived [her] of a fundamental right." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013). An action violates substantive due process when it is "arbitrary, capricious, or without rational basis." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (citation and internal quotation marks omitted). The standard for judging these claims is whether the challenged action "shocks the conscience." *Koessel*, 717 F.3d at 749 (citation and internal quotation marks omitted). To satisfy this standard, "a plaintiff must do more than show

that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Tonkovich*, 159 F.3d at 528 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995)).  "Instead, a plaintiff 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* (quoting *Uhlrig*, 64 F.3d at 574).

Here, plaintiff bases her substantive due process claims against ADA Glasser on his decision not to prosecute plaintiff and her sister based on a domestic incident.  The Complaint simply fails to allege any facts that are capable for supporting a reasonable finding or inference that ADA Glasser's charging decisions (or the decision not to charge) amounted to an act that "shocks the conscious."  *See Uhlrig*, 64 F.3d at 576–77 (affirming summary judgment against substantive due process claim asserted against state mental health administrators who allegedly caused therapist's death by closing special unit in mental hospital that was reserved for the criminally insane and placing particular patient into the general hospital population where he eventually killed the therapist because none of the defendants intended to injure the therapist and they weren't indifferent to the risk imposed by closing the special unit, and thus, defendants "did not engage in any conduct that was so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience"); *see also Alexander v. Bouse*, No. 17-2067, 2018 WL 1083256, at *7 (D. Kan. Feb. 28, 2018) (holding that plaintiff failed to state plausible substantive due process claim against Kansas Highway Patrol officer who attempted to stop a drunk driver by deploying stop sticks and directed plaintiff to pull over her vehicle to the side of the highway where the drunk driver eventually crashed into plaintiff's car causing life-threatening injuries because officer's conduct did not shock the conscience).  Plaintiff thus fails to state a § 1983 substantive due process claim against ADA Glasser.

In sum, none of plaintiff's § 1983 claims state a plausible claim for relief.  Thus, the court dismisses plaintiff's First Amended Complaint for failing to state a claim.[9]

### D.  Kansas Tort Claims

Plaintiff's original Complaint asserted Kansas tort claims.  *See* Doc. 1 at 31–36.  Her First Amended Complaint abandons her Kansas claims and asserts only § 1983 claims.  Doc. 54 at 16–26 (First Am. Comp. ¶ 98–164).  But also, it asserts that she is invoking "supplemental jurisdiction" for her "claims arising under state law" under 28 U.S.C. § 1367.  *Id.* at 2 (First Am. Compl. ¶ 6).  And, the First Amended Complaint contains a fleeting reference to the "Kansas Tort Claims Act" and the "common law of the State of Kansas."  *Id.* at 3 (First Am. Compl. ¶ 7).  Defendants Rosas and Hawkins assert several arguments supporting dismissal of any Kansas claims that plaintiff has asserted in her First Amended Complaint.  Alternatively, they argue that the court should decline supplemental jurisdiction under 28 U.S.C. § 1367.

The court finds that plaintiff hasn't asserted any Kansas claim in her First Amended Complaint.  Plaintiff's First Amended Complaint "supercedes [her] original complaint and renders the original complaint without legal effect[.]"  *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (citation and internal quotation marks omitted).  The First Amended Complaint asserts just three Counts—the three § 1983 claims already discussed in the court's analysis, above.  It never asserts any Kansas claim.  And, plaintiff's Response to defendants Rosas and Hawkins's Motion to Dismiss never responds to their arguments about dismissing any asserted Kansas claims.  *See generally* Doc. 64.  Thus, the court concludes, plaintiff has abandoned her Kansas claims by not asserting them in the First Amended Complaint.  *See Mink*, 482 F.3d at

---

[9]       Defendants also assert that qualified immunity bars plaintiff's claims.  Because the court has determined that plaintiff's claims fail for several reasons, all discussed above, it need not reach defendants' qualified immunity arguments.

1254.  And, even if one could construe the First Amended Complaint's stray reference to the Kansas Tort Claims Act and the common law of the State of Kansas as asserting a Kansas claim,[10] plaintiff has abandoned any such claim by failing to respond to defendants Rosas and Hawkins's dismissal arguments.  *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's dismissal of plaintiff's § 1983 equal protection claim after it concluded that plaintiff had abandoned the claim because he had not addressed it in his memorandum opposing summary judgment); *see also C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1337 (D. Kan. 2008) (concluding that plaintiff had abandoned his retaliation claim by not responding to defendant's motion for summary judgment against the claim).

## V.      Conclusion

For the reasons explained, the court grants defendants' Motions to Dismiss (Docs. 60 & 62) under Fed. R. Civ. P. 12(b)(6) for several reasons:  (1) the statute of limitations bars plaintiff's claims; (2) defendant Glasser has absolute prosecutorial immunity against plaintiff's claims; and (3) plaintiff fails to state a plausible claim for relief § 1983 against all three defendants.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Rosas and Hawkins's Motion to Dismiss (Doc. 60) is granted.

**IT IS FURTHER ORDERED THAT** defendant Glasser's Motion to Dismiss (Doc. 62) is granted.

**IT IS SO ORDERED.**

---

[10]      As already explained, the court doesn't apply the pro se liberal construction standard to plaintiff's pleadings here because she is a licensed attorney.

Dated this 27th day of September, 2022, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge